## 67828. SPIVEY v. THE STATE.

BIRDSONG, Judge.

Douglas Vincent Spivey was convicted of driving under the influ-

ence of alcohol and sentenced to twelve months on probation. Spivey was arrested on January 21, 1983, after being in a minor single car accident. Because of his visibly apparent physical condition, he was administered a breatholizer test that registered .22 grams of alcohol in his blood, which presumptively rendered him under the influence of alcohol. Being dissatisfied, Spivey demanded and was administered his own blood alcohol test. A qualified nurse in the presence of a police officer took two vials of blood at the request and with the consent of Spivey. The blood was withdrawn into a vacuum tube. Each tube was stoppered, i.e., sealed. The nurse wrote Spivey's name, the date, and her name on the label affixed to the tubes of blood. The nurse then took surgical tape and taped the stoppers, used clear tape to tape the tubes together and gave them to Spivey. The nurse informed Spivey he would have to deliver the tubes to the crime lab himself but should keep the blood refrigerated.

As soon as Spivey was released from custody, he returned home and placed the blood samples under refrigeration. He left the vials in his refrigerator until he personally delivered them to an employee of the crime lab in Atlanta for analysis. Without contradiction, Spivey testified he did not tamper with the vials after they were secured by the nurse and that he delivered them to the crime lab in the same condition as he received them from the nurse. No one touched the vials from the time he received them from the nurse until he delivered them to personnel at the crime lab.

Defense Exhibit "I" which was offered to the trial court for admission reflected that on January 24 (the day Spivey testified he delivered the tubes to the lab), the lab received two test tubes from Spivey. Each tube had stoppers sealed with surgical tape. The tubes had a gummed label containing the name of Douglas V. Spivey. The officers involved in the case were Ramey and Pope, the two officers called by the state to testify concerning the taking of the breatholizer and blood test. The result of the subsequent lab test was negative for ethyl alcohol.

During the trial of the case, the state offered the test results of a breatholizer test which was admitted for consideration by the jury. After the state had rested, the defense called the nurse who took the appellant's blood and offered evidence of the chain of custody through appellant. Spivey then sought through the lab technician to introduce the results of the blood alcohol tests conducted by that chemist. Spivey made no effort to introduce and in fact affirmatively stated there was no desire to introduce the two vials of blood, only the written results of the testing of the blood samples. The state objected to the introduction of the tests in the absence of the physical presence of the two vials of blood. The transcript reflects the following: "THE COURT . . . But he [prosecutor] is absolutely correct that

he has a right to cross-examine the nurse, to cross-examine Spivey, and cross-examine Mr. Hancock [the chemist] here about these particular vials, or test tubes, or whatever they are, in which the alleged blood sample was taken and tested. If, in fact, it was, then he's got a right to cross-examine them. Is this the one? Are these the two? Now, they are not here." "[APPELLANT'S ATTORNEY]: No, sir. I believe that can be done, though, through the description of the tubes themselves." "THE COURT: Absolutely not. Absolutely not. . . . The objection is well taken and I'm going to sustain it. And you, therefore, are not authorized to examine Mr. Hancock about the alcohol content of any vials that he tested in this case, unless the vials are produced in the court and the state's given the right to cross-examine."

Upon the conclusion of the evidence and after the charge of the court, the jury experienced great difficulty in reaching a decision. The court at one point considered a mistrial. Late in the day, the jury requested additional instructions on the meaning of blood alcohol content. The court charged the jury (for the second time) that a blood alcohol reading of .1 or more presumptively established intoxication. At no point however was the jury aware that the blood alcohol test performed by the state chemist showed a negative alcohol reading.

Spivey brings this appeal urging error by the trial court in refusing the introduction of the written report of a blood alcohol analysis simply because the substance tested was not present in the court. *Held*:

We conclude the trial court erred in refusing to allow the testimony of the state chemist as to the results of his test simply because the two vials of blood were not present. In substance the state argued that where the evidence clearly showed consumption of alcoholic beverage within a reasonable time of the extraction of the blood, a negative alcohol analysis showed tampering with the sample. Thus, the state argued that without the vials of blood, it was deprived of the right to cross-examine the various parties who extracted, transported, and tested the blood sample and thereby to show a break in custody or a tampering with the tested substance. Spivey on the other hand maintained that chain of custody, which in essence constituted the state's objection, was fully established by the evidence. Spivey argued that the absence of the vials went to the weight of the evidence and not its admissibility.

We hold that Spivey's contention is the correct one. In proving the chain of custody the offering party is not required to show that the substance was guarded closely each minute, and in the absence of a showing to the contrary, the chain is not thereby broken. Moreover, in the absence of probative evidence of tampering, the chain is not shown to be broken, and where there is only a bare speculation of

tampering, it is proper to admit the evidence and let any doubt go to its weight. *Williams v. State*, 153 Ga. App. 421, 422 (3) (265 SE2d 341). In the *Williams* case an agent kept the substance to be tested in her possession for a substantial period of time and then surrendered it to an agent of the crime lab who was not called to testify. Thus, the witness who tested the sample did not know who brought it to the crime lab or who handled it in the crime lab, and could testify only as to his testing. Nevertheless the results of the test were admitted. Moreover, it has been held in this state that even though the tested substance is totally consumed during the testing process or perhaps has been destroyed in between the time of the testing and the offer of the test results in evidence, the absence of the tested material does not preclude admissibility of the test results. *Patterson v. State*, 138 Ga. App. 290, 291 (2) (226 SE2d 115), affirmed but overruled on other grounds, 238 Ga. 204, 207 (232 SE2d 233).

If the objection offered by the state had validity, then a defendant could object to the results of any breatholizer test inasmuch as the breath sampled would never be available as evidence. We are satisfied that the results of the test in this case were admissible, inasmuch as we conclude that the chain of custody was satisfactorily established. The state's right to test the reliability of the procedures followed could have been fully developed by cross-examination and rebuttal leaving the weight to be given the test results to the jury. *Davis v. State*, 135 Ga. App. 203, 204-205 (217 SE2d 343).

While ordinarily we might invoke the harmless error rule, inasmuch as there was substantial competent evidence of Spivey's physical condition indicating that he was under the influence of intoxicants, the jury obviously was not easily persuaded by that circumstantial evidence of intoxication. The verdict of guilty followed a recharge that a blood alcohol reading of .1 or more called for a presumption of intoxication without any limitation that this was rebuttable. We cannot speculate as to what the jury might have concluded from conflicting evidence that a state-conducted test showed a negative alcohol content and that a breatholizer test conducted at about the same time on the same individual showed a .22 alcohol content. Accordingly, we cannot conclude that the error in refusing the testimony is harmless.

*Judgment reversed. Quillian, P. J., and Carley, J., concur.*

DECIDED MARCH 9, 1984.

*Brian S. Carney,* for appellant.
*Ken Stula, Solicitor,* for appellee.